**LOVELACE v. UNITED STATES.**

**Civ. No. P–237.**

District Court, S. D. Illinois, N. D.

Sept. 1, 1943.

Hunter, Kavanagh & McLaughlin, by E. D. McLaughlin, all of Peoria, Ill., for plaintiff.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., for the Government.

ADAIR, District Judge.

Findings of Fact.

The Court finds:

1. That the plaintiff, Thomas G. Lovelace is a citizen and resident of Peoria County, Illinois in the Northern Division of the Southern District of Illinois.

2. That this is a suit for the recovery, with interest, of income tax levied and assessed against the plaintiff for the calendar year 1937, and paid by him, under protest, on the 8th day of April, 1941, to V. Y. Dallman, Collector of Internal Revenue for the 8th District of Illinois.

3. That the amount involved in this suit, including interest and costs, does not exceed the sum of $10,000, and that this Court has jurisdiction of the subject matter and the parties to this proceeding.

4. That on, to wit, May 10, 1932, Western Holding Company, a corporation, became and continued from thence hitherto to be lawfully indebted to the plaintiff in the sum of $33,000, no part of which has ever been paid.

5. That on or about March 1, 1938, plaintiff filed with the Collector of Internal Revenue for the proper district, his Income Tax Return for the calendar year 1937, wherein he took as bad debt deduction from income the said debt in the amount of $33,000 owing to him from said Western Holding Company, and by reason of such deduction, his Return showed no income tax due from him to the United States for said calendar year 1937.

6. That thereafter the Collector disallowed said deduction and assessed a deficiency tax against the plaintiff in the sum of $2,446.22 for said year, said tax being based solely on the disallowance of said bad debt deduction in the sum of $33,000; and on, to wit, the 31st day of March, 1941, the Collector mailed to the plaintiff a demand for tax in the sum of $2,446.22, plus interest in the amount of $445.53, under threat of penalties.

7. That on the 8th day of April, 1941, the plaintiff paid, under protest, to V. Y. Dallman, as Collector of Internal Revenue at Springfield, Illinois, the said sum of $2,891.75.

8. That within two (2) years of the date of such payment, the plaintiff, on March 16, 1942, filed with V. Y. Dallman, Collector of Internal Revenue at Springfield, Illinois, a claim for the refund of said tax, with interest, on proper Treasury forms.

9. That on the 2nd day of September, 1942, the Commissioner of Internal Revenue disallowed plaintiff's claim for such refund, and mailed to the plaintiff notice of disallowance in full of his aforesaid claim.

10. That two (2) years since the date that the Commissioner of Internal Revenue mailed notice to plaintiff of disallowance of his said claim, had not expired when the plaintiff commenced this suit.

11. That the government through its attorney of record admitted on the trial of this case, that the only question involved herein was whether the said bad debt due to the plaintiff from Western Holding Company should have been charged off as wholly worthless during the calendar year 1936 or 1937 as was done by the plaintiff, and that no other questions, or no other years are involved in this suit.

12. The debt of Western Holding Company to the plaintiff arose in the following manner: Western Holding Company was a Montana Corporation created by stockholders of Home Savings & State Bank, a State banking corporation, of Peoria, Illinois, for the sole purpose of taking over farm mortgages owned by the bank and real estate acquired by the bank in satisfaction of farm mortgages owned by the bank, which were not acceptable bank assets. Its capital consisted of $300,000 of preferred stock and $507,000 of common stock, all of which was owned by stockholders of Home Savings & State Bank. Plaintiff was a stockholder and director of Home Savings & State Bank and also of Western Holding Company. On May 10, 1930, Western Holding Company borrowed of Commercial Merchants National Bank and Trust Company of Peoria, a national banking association, the sum of $400,000. About that time it also borrowed, or owed to Peoria Life Insurance Company, the sum of $235,000. To secure its debt to Peoria Life Insurance Company, Western Holding Company pledged to Peoria Life Insurance Company all of its real estate and farm mortgages on real estate situated in Southwestern States; and on May 10, 1930, Western Holding Company, to secure its debt to Commercial Merchants National Bank and Trust Company of Peoria, pledged to that bank all the rest of its real estate mortgages and real estate, substantially all of which consisted of either farm land or mortgages on farm land located in the State of Montana. The Commercial Bank demanded additional security, and thereupon a number of the directors of Western Holding Company gave their personal notes, the plaintiff giving his note in the amount of $33,000. On May 10, 1932, the Commercial Bank called those individual notes given by directors of Western Holding Company, and the plaintiff on that day paid his note, and Western Holding Company immediately acknowledged to him in writing that it was indebted to him for said sum of $33,000.

13. On December 31, 1930, the book assets of Western Holding Company amounted to $1,594,237.72, while its liabilities, exclusive of stock liabilities, consisted of—

Bills payable to Commercial Merchants National Bank and Trust Company........ $400,000.00
To Peoria Life Insurance Company ...................... 215,000.00
Real Estate Loan........... 3,000.00

Total .................. $618,000.00

On December 31, 1932, the book value of the assets of the company was $1,505,-300.63, and its liabilities, exclusive of stock liabilities, were—

Bills payable to Commercial Merchants National Bank and Trust Company........ $348,296.75
To Peoria Life Insurance Company ...................... 203,000.00
To its guarantors (Including the Plaintiff) .............. 158,000.00

Total .................. $709,296.75

14. Montana had been a large wheat producing state. Its farming history covered a comparative short period of time. In the 30's a cycle of drouth hit the state and for a number of years it produced little or no crops. In former years when it was producing, one wheat crop often equaled in value the entire purchase price of the land.

15. Western Holding Company, being engaged solely in the management and liquidation of its capital assets, had heavy payments of taxes, management charges,

and expenses and in drouth years, which continued throughout the entire period in question, had practically no income, items of receipts being very largely the proceeds of the liquidation of its capital assets.

16. The security behind its debts and the value of its capital stock depended entirely upon the time when, and the price at which its capital assets could be liquidated, and that time, and that price, depended very largely upon the breaking of the drouth in Montana, the crops that could be raised, the price at which those crops could be sold and the morale of the farmers of the State. In the meantime, management costs, expenses and taxes were chargeable almost in full against capital assets rather than against any earned income.

17. By the year 1935, Peoria Life Insurance Company had passed into receivership, and during the latter part of the year negotiations were being carried on between the Receiver of Peoria Life Insurance Company and Western Holding Company, looking toward the Receiver taking over in full settlement of the debt to Peoria Life Insurance Company all the Southwestern farm mortgages and farm land pledged to Peoria Life Insurance Company, and in 1936 the deal was consummated and the Receiver of Peoria Life Insurance Company took over those Southwestern lands and farm mortgages in full satisfaction of the $235,000 debt of Western Holding Company, and thereby any contingent claim which the Receiver of Peoria Life Insurance Company might have against the Montana assets of Western Holding Company for a deficiency claim was wiped out.

18. Plaintiff during this period of time was also a director and official of Commercial Merchants National Bank and Trust Company. Western Holding Company was managed by Sylvan L. Olson, Manager, who maintained his office in Peoria, Illinois, and its affairs in Montana were under the personal supervision of C. C. Williamson, the company's representative in Montana. Both of these men were experienced farm men, and Olson in particular had had long years of experience with Montana farm lands, and the plaintiff, as a director and official of both Western Holding Company and Commercial Merchants National Bank and Trust Company, kept in close touch with the affairs of Western Holding Company.

19. In July and August of 1936, plaintiff, in the company of George L. Luthy, President of Commercial Merchants National Bank and Trust Company, Sylvan L. Olson, Manager of Western Holding Company and C. C. Williamson, the company's representative in Montana, made an extended trip through the State of Montana inspecting the various properties in which Western Holding Company had interest, talking to the residents of the State, and generally inspecting conditions in the State. On that trip they ascertained that although drouth conditions and damage from insect pests continued generally in the State, yet in certain portions of the territory where the Western Holding Company properties were located there had been sufficient rain to produce a wheat crop, and plaintiff formed the opinion that there were reasonable grounds for the belief that the drouth either had been, or was about to be broken; that the land was still capable of producing valuable wheat crops and that the assets of Western Holding Company could shortly be liquidated in an orderly manner, so as to pay in full its obligation to Commercial Merchants National Bank and Trust Company of Peoria, and in addition thereto pay its indebtedness to the guarantors (including the plaintiff).

20. However, in the year 1937 the drouth continued as bad, or worse, than it had in previous years, and then, for the first time, insect pests invaded the irrigated portion of the State of Montana, and the morale of the farmers in the State became very poor.

21. As of December 31, 1936, the total book value of the assets of Western Holding Company were $683,455.12, and the total liabilities, other than liability on preferred and common stock, were $424,693.66.

22. That plaintiff kept himself informed as to these conditions in Montana, consulted as to conditions existing there both with the representative of the company in Montana, and its manager in Peoria, and that plaintiff did not believe that his debt was worthless until the year 1937, and that he acted in good faith.

23. That the plaintiff paid an income tax for the year 1934, and made no claim for loss by reason of his preferred stock or money advanced to the Commercial Merchants National Bank and Trust Company, and it was not until the year 1939

that the plaintiff was advised that the Revenue Department had assessed the loss on the preferred stock for the year 1934. Plaintiff then requested that a refund be allowed on his income tax for the year 1934 because of such loss, and the same was refunded to said plaintiff.

24. In the year 1936 several taxpayers had asked that their similar loss be credited on their income tax return and after numerous hearings the Revenue Department more or less arbitrarily determined that this loss should be credited for the year 1936, and in accordance with such determination reached more or less by compromise of the department with the other claimants refused the credit of such loss to the plaintiff for the year 1937.

25. That the plaintiff, as the result of his personal inspection of conditions in Montana in the year 1936, had a sound logical basis upon which to found his conclusion that a speedy breaking of the drouth might result in the Western Holding Company being able to pay him his debt in whole, or in substantial part, and that he had a sound and reasonable basis upon which to base his opinion that the drouth had been or was about to be broken.

26. That the continued drouth in Montana during the year 1937, coupled with the invasion, for the first time of the insect pests into the irrigated portion of the State in serious numbers, and the hopelessness and despondency of the farmers in Montana as a result thereof, all of which facts were known to the plaintiff, constituted a sound reasonable basis upon which to form his opinion that, in view of continued operating expenses, it would be impossible for the assets of Western Holding Company to be liquidated at a price which would result in anything being paid to him on his debt.

27. That the plaintiff ascertained, and for the first time ascertained, that said debt was worthless during the calendar year 1937.

### Conclusions of Law.

The Court, therefore, makes the following Conclusions of Law:

1. The determination of the actual date of loss from the facts before the court is, of course, extremely difficult. Looking back and knowing the valuation of farm lands from the year 1932 to the present date, is convincing that the loss became total on the date of the inception of the obligation. However, the plaintiff in this case is not confined to a backward view, but is entitled in the exercise of good faith and honesty to determine what, in his opinion, was the actual date of loss.

Viewing the facts as a whole, the court is of the opinion that the plaintiff was entitled to take into consideration that the book values of these securities at the time of his pledge was more than $1,500,000; that they pledged a sum of about $600,000 and that if climatic conditions would improve in the State of Montana that land values would increase, and that there was a reasonable likelihood that such securities would not only pay off the bank and Insurance Company, but would also pay the money advanced by him to the Bank as additional security; and might also pay back his interest in the preferred stock of such corporation. The evidence shows that he on frequent occasions investigated the values of land in the State of Montana; that he visited the site with the hope and anticipation of an increase in value of such property.

Some of the equally interested parties claimed a loss for the year 1932, and every year thereafter, and it was not until the year 1934 that the Revenue Department admitted a loss for even the preferred stock and this was not determined by the Comptroller until the year 1939.

2. The plaintiff ascertained, and for the first time ascertained, that the debt of Western Holding Company to him, in the sum of $33,000, was worthless during the calendar year 1937.

3. Plaintiff rightfully took credit for such worthless debt in his income tax return for the calendar year 1937.

4. The Collector of Internal Revenue wrongfully assessed and collected from the plaintiff, under protest, on April 8, 1941, as income tax for the year 1937, with interest thereon, the sum of $2,891.75, and that such tax was based solely upon the disallowance of the deduction as a Bad Debt of the debt due the plaintiff from Western Holding Company.

5. Plaintiff is entitled to judgment against The United States of America in the sum of $2,891.75, with interest at the rate of 6% per annum from April 8, 1941, to the date of the entry of the judgment herein.

6. And that judgment should be entered in favor of the plaintiff and against The United States of America accordingly.